# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

# BATON ROUGE DIVISION

| | | |
|---|---|---|
| **MMR GROUP, INC., ET AL** | : | **DOCKET NO. 10-0097** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **SOLAR MILLENNIUM, LLC** | : | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Defendant, Solar Millennium, LLC ("SM") filed a motion to transfer venue to the Northern District of California.[1] Plaintiffs opposed the transfer after which the Magistrate Judge issued a report recommending that the motion be denied based on his finding that SM had failed to show that venue should be changed for the convenience of the parties. For the following reasons, we will not accept the recommendation and will grant the motion to transfer the case to the Northern District of California.

## FACTUAL ALLEGATIONS

The plaintiffs are as follows: (1) MMR Group, Inc. is a Louisiana limited liability company authorized to do business in Louisiana; (2) MMR Power Solutions, LLC is a wholly owned subsidiary of MMR Group and is a Louisiana limited liability company authorized to do business in California; (3) Southwestern Power Group II is a Delaware limited liability company authorized to do business in Arizona.[2] These plaintiffs will be collectively referred to as "MMR". Defendant,

---

[1] R. #6.

[2] R. #1-2, ¶ 2.

Solar Millennium, LLC ("SM") is a California limited liability company with its corporate offices and principal place of business in Berkeley California.[34]

In their petition, MMR alleges that since January 2008, it has worked with SM in order to bid on numerous solar power projects in Arizona, California and Colorado. MMR alleges that the parties were operating as either a joint venture or a partnership, along with Tenaska Capital Management, LLC ("Tenaska"). On March 19, 2008, SM, MMR and Tenaska (collectively referred to as the "Group") bid three projects in Arizona. After the proposals were sent, the parties began negotiating a Joint Development Agreement ("Agreement"). The Agreement was not executed by the parties, but MMR alleges that the parties continued to "work together as a joint venture and/or partnership in order to develop several solar power projects."[5] MMR further alleges that the parties agreed to continue to operate as a joint venture and/or partnership at a meeting even though the Agreement was not signed.[6]

The Group made another bid proposal to the Public Service Company of Colorado on April 11, 2008. On the letter head, signed by Josef Eichhammer, Chief Executive Officer of SM, the Group was referred to as the "Solar Consortium." On May 12, 2008, the Group bid two projects to Pacific Gas & Electric ("PG&E"). The letterhead again signed by Josef Eichhammer, referred to the Group as the "Solar Consortium." On June 30, 2008, PG&E selected the Group's bid; the project is known as the "PG&E Blythe project".

---

[3] Id., ¶ 3.

[4] Josef Eichhammer affidavit, ¶ 7, attached to motion to transfer. R. #6.

[5] R. #1-2, ¶ 6.

[6] Id.

2

On August 13, 2008, the Group made two bid proposals to the Arizona Public Service Company, but the Group was not selected. In December 2008, SM allegedly maneuvered to remove Tenaska from the PG&E Blythe project. Meetings concerning negotiations for the PG&E Blythe project were held with PG&E from July 2008 through June 2009 and included MMR.

On January 6, 2009, a draft of the Power Purchase Agreement with PG&E for the PG&E Blythe project was circulated among the parties for comment. Again, the parties were referred to as the Solar Consortium. Also in January 2009, MMR met with SM to discuss the Power Purchase Agreement and other matters involving the PG&E Blythe project. On February 3, 2009, the Group met in Arizona to discuss the PG&E Blythe project. Eventually, Tenaska withdrew from the project. On several occasions during February and March 2009, MMR participated in meetings with PG&E regarding the PG&E Blythe project and the Power Purchase Agreement. MMR and SM met in March 2009 to discuss the proposed agenda for the PG&E Blythe project.

On March 26, 2009, Mr. Eichhammer of SM, met with MMR in Baton Rouge. At the meeting, SM and MMR allegedly agreed to proceed with the PG&E project as a 50/50 joint venture and/or partnership and further agreed to have SM draft a term sheet on the project. Other discussions were had between SM and MMR via email and telephone. Meanwhile, Mr. Eichhammer began drafting the term sheet and MMR continued its work on the PG&E Blythe project through June of 2009.

In June 2009, Mr. Eichhammer of SM decided that MMR would no longer be a part of the PG&E Blythe project and attempted to exclude MMR from a meeting with PG&E on June 19, 2009. When MMR's representative appeared at the meeting, he was asked to leave by SM. MMR later discovered that SM had made arrangements with Chevron Energy Solutions Company to work on

the PG&E Blythe project without MMR's knowledge and in violation of the joint venture and/or partnership.

MMR filed the instant suit against SM asserting that it had breached a fiduciary duty and tortiously interfered with MMR's relationship with PG&E. MMR seeks damages for the loss of business on the PG&E Blythe project, general damages, and punitive damages. Pursuant to 28 U.S.C. § 1404, SM moves for an order to transfer the matter to the Northern District of California because the overwhelming majority of activities alleged to have given rise to plaintiffs' claims occurred in the Northern District of California, and the majority of the witnesses and documents relevant to the dispute are located in that district. Thus, for the convenience of the parties and witnesses and in the interest of justice, SM seeks to have the case transferred.

## LAW AND ANALYSIS

District courts have "broad discretion in deciding whether to order a transfer."[7] In Gulf Oil Corp. v. Gilbert,[8] the Supreme court firmly established in the federal courts the common-law doctrine of *forum non conveniens*. The essence of the doctrine was that a court may decline jurisdiction and may actually dismiss a case, even when the case is properly before the court, if the case more conveniently could be tried in another forum.[9]

Shortly after the Gilbert decision, in 1948, the venue transfer statute became effective, namely 28 U.S.C.A. § 1404. Under this statute, a federal court will transfer the case within the federal system to another federal venue more convenient to the parties, the witnesses, and the trial

---

[7] Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998).

[8] 330 U.S. 501, 507, 67 S.Ct. 839 (1947).

[9] Gilbert, 330 U.S. at 507, 67 S.Ct. 839.

4

of the case. In Norwood v. Kirkpatrick,[10] the Supreme Court remarked that "Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience."[11]

The party seeking the transfer "must show good cause."[12] Private and public interest factors, as enunciated in Gilbert, are to be considered in determining whether good cause has been shown.[13] The private interest factors are as follows: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses: and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[14] The public interest factors are: (1) "the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[15]

These factors "are appropriate for most transfer cases," but "are not necessarily exhaustive or exclusive."[16] Furthermore, "none . . . can be said to be of dispositive weight."[17]

---

[10] 349 U.S. 29, 79 S.Ct. 544 (1955).

[11] Id. at 32.

[12] In re Volkswagen of America, Inc., 545 F.3d 304, 312-315 (5th Cir. 2008).

[13] Id. at 315.

[14] Id.

[15] Id.

[16] Id. at 317.

[17] Id. Citing Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004)).

5

Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. The party seeking transfer of venue must show good cause for the transfer. The moving party must show that transfer is "clearly more convenient." Otherwise, a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred.[18]

SM maintains that MMR's claims relate to the Northern District of California and the vast majority of meetings and discussions regarding the PG&E Blythe project occurred in the Northern District. SM also asserts that nearly all of the participants and witnesses reside in the Northern District and the project itself is located in California to provide electrical power to California residents. Finally, SM asserts that MMR's claim for tortious interference relates to alleged actions taken by SM in California and pertains to MMR's relationship with a California utility, PG&E. SM argues that Louisiana's connection to the dispute is tenuous and minimal. SM remarks that only one meeting was held in Louisiana and there are no third-party witnesses who reside in Louisiana.

MMR submits that in order to prove a joint venture relationship, it will have to rely upon witnesses and documents pertaining to the numerous other bids[19] submitted jointly by MMR, SM and TPF II, LP,[20] because the joint venture relationship was formed prior to having submitted said bids. In contrast, SM suggests that the only bid at issue is the one of May 2008, concerning the PG&E Blythe project.

---

[18] Konami Digital Entertainment Co., Ltd. v. Harmonix Music Systems, Inc., 2009 WL 781134 at *1 (E.D. Tex. 2009)(internal citations omitted).

[19] The bids involved projects located in Arizona, Colorado and California.

[20] A private equity fund founded by its managing directors and the employee-owners of Tenaska, Inc. and managed by Tenaska Capital Management, LLC.

*Private interest factors*

At the onset, the court recognizes that there is no document executed by the parties to establish that a joint venture existed. Instead, plaintiff relies on the parties' past conduct and/or bids for projects in California, Arizona and Colorado. There were no bids made to entities in Louisiana. SM argues that most of the relevant documents are in the Northern District of California; SM remarks that it prepared all information relating to the bid (referring to the PG&E Blythe project only) and that most of the meetings took place in California. MMR submits that relevant documents are located in Louisiana, Nebraska, Arizona, Massachusetts and Texas. Thus, MMR posits that because all of the documents are not located in the destination venue, the defendant's documents being in that venue does not weigh in favor of transfer,[21] but instead makes this factor neutral.

SM argues that we should consider where the majority of relevant documents are located.[22] The Magistrate Judge found this factor to be neutral. However, upon closer scrutiny, we do not find that just because Plaintiffs may have some documents in Louisiana, that this factor is neutral. As noted by SM, the majority of the documents are located either in California, (because that is the location of SM, PG&E, the PG&E project, and Chevron – the third party that allegedly replaced MMR) or in Nebraska, Arizona, Massachusetts, and Texas. Accordingly, as to ease of access, we

---

[21] Citing Konami, 2009 WL 781134 at *4.

[22] Citing Fujitsu Ltd. v. Tellabs, Inc., 639 F.Supp.2d 761, 768 (E.D. Tex.2009); see also BLB Aviation S.C. LLC v. Jet Linx Aviation Corp., 2009 U.S. Dist. LEXIS 124343, at #12 (M.D. La. Nov. 16, 2009)(where one party "is in possession of more of the information relevant to the issues in th[e] case," the ease of access to sources of proof factor weighs in favor of transfer to the location of that party); Remmers v. United States, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009); Fincher v. Kansas City S. Ry.Co., 2009 U.S. Dist. LEXIS 8088, at *4-5 (W.D. La. Feb 4, 2009)(Trimble, J. (granting transfer where all but one of the witnesses lived closer to the transferee court and "documentary evidence. . . may just as easily be produced" there).

7

find that this factor weighs in favor of the Northern District of California.

SM maintains that the court must concentrate primarily upon the availability and convenience of "key" witnesses.[23] SM submits that most of the "key" witnesses all live in the Northern District of California. SM presents that six of its "key" witnesses reside in the Northern District of California,[24] whereas only two "key" witnesses reside in Louisiana.[25] MMR argues that witnesses from Tenaska are relevant because it did not withdraw until 2009. MMR names three non-party witnesses[26] who live in Omaha, Nebraska and Texas and another non-party witness[27] who resides in Massachusetts. MMR further identifies witnesses from Fluor Corporation,[28] two who reside in Texas and two who reside in Southern California. We find that the majority of the "key" witnesses are located in Northern California (at least six) and only two witnesses are located in Louisiana. Therefore, we find that this factor weighs in favor of the Northern District of California.

SM maintains that there are more non-party witnesses that are subject to compulsory process in the Northern District of California than the Middle District of Louisiana. The Magistrate Judge found this factor to be neutral and MMR argues that while there are two non-party witnesses subject to the subpoena power of the Northern District of Louisiana,[29] it has eleven non-party witnesses it

---

[23] Remmers, 2009 WL 3617597, at *5.

[24] Josef Eichhammer, Ray Dracker, Shujia Ma, Richard Becker, Uday Mathur, and Shujia Ma. SM exhibit B attached to objection to Magistrate's Report and Recommendation.

[25] James "Pepper Rutland" and Jonathon Bruser. Id.

[26] Steven Johnson, Steven Brewer and Bart Ford.

[27] Dennis Loria.

[28] Jim Lilly, Scotty Scott, Brad Friesen and Wolfgang Grienke.

[29] Uday Mathur and Hugh Merriam.

8

plans to call to testify as to the relationship of MMR and SM; these witnesses are not subject to the subpoena power of either California or Louisiana. As noted by SM, none of these witnesses are subject to compulsory process in Louisiana, while at least two are subject to compulsory process in the Northern District of California. Thus, we find that this factor weighs in favor of the Northern District of California.

*Public interest factors*

SM maintains that the public interest factors favor transfer to the Northern District of California because it has a greater interest in the dispute. SM remarks that there was only one meeting between SM and MMR that occurred in Louisiana; MMR does not dispute this. Instead, MMR relies on the fact that its principal place of business is located in Baton Rouge, Louisiana. Thus, MMR maintains that neither venue has a greater interest, making this factor neutral. We disagree. A vast majority of the meetings took place in California, the alleged joint venture directly involves the PG&E Blythe project which is located in Northern California, PG&E is a California utility, and the alleged breach occurred in California when MMR was excluded from a meeting. Therefore, without disregarding the fact that MMR is located in Louisiana, we find that the Northern District of California has a greater interest in this dispute than Louisiana.

As noted by MMR, this dispute involves the alleged breach of a fiduciary duty based on an alleged joint venture. Neither party disputes that California law will apply, even though MMR maintains that we cannot speculate on the question of which state's law would apply in a diversity action, – thus, it maintains that this factor is neutral. We do not find it necessary to determine if this factor favors California or Louisiana. The parties have not fully briefed the issue of which state's laws would apply and we hesitate to speculate at this juncture, even though there is no doubt that

9

California has more contacts regarding this dispute than Louisiana. However, we conclude that the other factors, both private and public, weigh in favor of transferring this case to the Northern District of California.

## **CONCLUSION**

Based on the foregoing, we do not accept the Report and Recommendation of the Magistrate Judge and will grant SM's motion to transfer this matter to the Northern District of California.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 22nd day of March, 2011.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE